# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number 262-475-9030

)
)
)
)
)
)
)

Case No. 19-MJ-1255

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
21 United States Code, Sections 841(a)(1) and 846

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by [investigative agency].

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Bridget Domaszek, Assistant United States Attorney
Printed Name and Title

Sworn to before me and signed in my presence:

Date: 6/6/19

_____
Judge's signature

City and State: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

## A. INTRODUCTION AND AGENT BACKGROUND

1. I, Scott Marlock, make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to locate the cellular device assigned call number (262) 475-9030, International Mobile Equipment Identity (IMEI) 359536092196005, which is described in Attachment A.

2. I am a Milwaukee Police Department (MPD) Detective and have been employed by MPD for the past 26 years. I have been an MPD Detective for the past 18 years. I am currently assigned to the Milwaukee Office of the United States Department of Justice, Drug Enforcement Administration (DEA), as a federally deputized Task Force Officer. During my time as a Detective, I have almost exclusively investigated violations of state and federal controlled substances laws and money laundering laws, including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have specialized training and experience in narcotics smuggling and distribution investigations. During my tenure with MPD and DEA, I have participated in over 500 narcotics investigations, and have authored over 100 affidavits supporting criminal complaints and search and seizure warrants. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and money laundering. I have had formal training and have participated in numerous

complex narcotics trafficking investigations, including complex conspiracies and wiretap investigations. Based on my training, experience, and participation in drug trafficking investigations and associated financial investigations involving large amounts of heroin, cocaine, crack cocaine, marijuana, and other controlled substances, I know and have observed the following:

    a)    I have utilized informants to provide information and evidence when investigating various criminal offenses. Through informant interviews, consensually recorded conversations, and extensive debriefings of individuals involved criminal activity, I have learned about the manner in which criminal individuals and organizations function in Wisconsin as well as in other areas of the United States;

    b)    I have relied upon informants to purchase controlled substances, firearms, and other evidence from dealers and have made undercover purchases of controlled substances and other evidence;

    c)    I have extensive experience conducting both physical and electronic surveillance of individuals engaged in illegal activity. I have participated in the execution of numerous search warrants where controlled substances, money, business records, stolen property, firearms, and records of the illegal activity were seized;

    d)    I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (crack cocaine), ecstasy and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    e)    I am familiar with the language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

    f)    I know that drug traffickers often use electronic equipment, cellular telephones and land-line telephones to conduct drug trafficking operations;

    g)    I know that drug traffickers commonly have in their possession, at their residences and other locations where they exercise dominion and control, firearms and ammunition including but not limited to – pistols, revolvers, rifles, shotguns, machine guns and other weapons, as well as records or receipts pertaining to firearms and ammunition;

h) I know that criminals commonly have in their possession, at their residences and other locations where they exercise domain and control, business and financial records, cash, valuables and records relating to assets;

i) I have been assigned to court-authorized interceptions of communications and have been trained to operate the equipment utilized to conduct such operations;

j) I know that drug dealers often put their phones in nominee names in order to distance themselves from phones that are utilized to facilitate the distribution of controlled substances. Because drug dealers go through numerous phone numbers, they often do not pay final bills when they are done using a phone number and then are unable to put another line in the name of that subscriber;

k) I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, real estate and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials; and

l) I have extensive experience with individuals who attempt to hide their illegal proceeds by the use of nominees to purchase assets, use of extensive cash purchases, use of cash payment of bills, use of safety deposit boxes, use of trusted associates to store bulk cash, and the use of legitimate businesses to report the illegal profits as legitimate business income..

3. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

4. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources: my experience investigating drug trafficking activities; oral and written reports, and documents about this investigation I have received from members of the DEA, local law enforcement, and other federal law enforcement agencies; discussions I have had personally concerning this investigation with experienced narcotics investigators; interviews with cooperating witnesses or confidential sources which I have personally conducted, or which have been reported to me either directly or

indirectly through oral and written reports; physical surveillance conducted by the Drug Enforcement Administration and local law enforcement agencies, the results of which have been reported to me either directly or indirectly through written reports, public records, telephone toll records, pen register, trap and trace information, and telephone subscriber information.1

5. Since the affidavit is being submitted for the limited purpose of determining the location and identification of the user of cellular telephone number for the above-listed target telephone, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to determine the location and identification of the user of cellular telephone number (262) 475-9030 identified in Attachment A

6. One purpose of applying for this warrant is to determine with precision any Target Cellular Device's location used by UM9030. There is reason to believe the Target Cellular Device is currently located somewhere within this district because UM9030, the user of the device, reportedly lives in and spends majority of his time in the Milwaukee, Wisconsin, area. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by UM9030 and others yet to be identified. There is also probable cause to believe that the location of the Target Cellular Device will constitute evidence of those criminal violations, including leading to the identification of other individuals who are

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

### B. PROBABLE CAUSE

9. In August 2018, the DEA Cincinnati Resident Office began an investigation into a poly-drug distribution ring operating in and around Cincinnati, Ohio. Derrick L. BRYANT was identified as a distributor of cocaine and heroin/fentanyl.

10. On March 28, 2019, members of the DEA conducted an operation utilizing a confidential source (CS1). CS1 is receiving monetary compensation and is not cooperating with law enforcement for case consideration. CS1 does not have a criminal history. The information provided by CS1 has been able to be independently corroborated and has proven to be accurate and reliable. CS1 has been deemed trustworthy and credible to agents satisfaction.

11. During this operation, CS1 met with BRYANT in order to discuss his drug trafficking operation and his need for a Spanish translator. The meet between CS1 and BRYANT was consensually recorded by CS1 at the direction of agents. During the conversation between CS1 and BRYANT, BRYANT indicated that he routinely received shipments of controlled substances, believed to be cocaine, from a source of supply in Sinaloa, Mexico. BRYANT informed CS1 that he had direct contact with an individual in Mexico and a courier who transported the controlled substances to Cincinnati, Ohio. BRYANT added that he believed the courier was

currently in the Milwaukee, Wisconsin, area. BRYANT told CS1 that he would receive between twenty (20) and thirty (30) kilograms of a controlled substance approximately every three weeks, and would distribute those kilograms to four (4) or five (5) individuals. BRYANT further indicated that he would store the controlled substances at one of his rental properties, but not his residence. BRYANT added that he often had trouble communicating with the co-conspirators importing the controlled substances because they were native Spanish speakers. BRYANT continued, stating that he typically paid between $34,000 and $36,000 per kilogram at the time of delivery and that he had been sourced by this group in Mexico for several years. BRYANT informed CS1 that for some unknown reason, these routine shipments stopped toward the end of November 2018, and that since that time, he (BRYANT) has been trying to get the shipments to continue. Also during the meet with CS1, BRYANT stated, "Since you're right here I'm gunna text my main guy. I'm texting and calling both, so one will show up with something."

12. After the meet with BRYANT, CS1 advised agents that during the meet, BRYANT was sending WhatsApp messages to an unidentified Hispanic male whom he/she believed to be a source of supply or courier for the DTO (UM9030). Additionally during the meet, BRYANT handed CS1 his telephone and requested that CS1 have a telephonic conversation (voice) with the Hispanic male, a source of supply or courier for the DTO. BRYANT requested this because of the language barrier and was aware CS1 is fluent in Spanish. During this conversation on BRYANT's telephone, CS1 and the unidentified male discussed a future shipment of controlled substances intended for BRYANT. The unidentified male indicated that the shipment would arrive within the next several days and would cost the same as the previous shipments.

13. Following the meet and debrief of CS1, at approximately 10:02 p.m., CS1 received an incoming call from BRYANT using (859) 638-1537. This telephone call was not recorded, and

agents were not present to monitor the conversation. According to CS1, this telephone call was continued conversation about a future drug transaction involving the unknown Hispanic male and to coordinate a three-way call with an unknown Hispanic male (UM9030), later identified as using (312) 533-7171. According to CS1, during the subsequent three-way telephone call, the Hispanic male wanted to ensure CS1 was not working for any other drug trafficking organizations and requested an in-person meet with CS1. CS1 believes this in-person meet may happen during a future drug transaction. Toll analysis conducted revealed UM9030 was utilizing cellular telephone number (312) 533-7171. A pen register was applied for and received on (312) 533-7171.

14. On April 8, 2019, the Honorable, Karen L. Litkovitz, U.S. Magistrate Judge, Southern District of Ohio, signed (3) search warrants authorizing the real-time/GPS tracking of cellular telephone (312) 533-7171, for a period of 30 days from the date the warrant was signed, and historical texts, and historical location information from March 5, 2019 to date of the order. The real-time/GPS information received on cellphone number (312) 533-7171 constantly showed the cellphone in the Milwaukee area. However, the results of the real-time/GPS on the cellphone were not within a distance feasible for determining the precise location and identifying UM9030.

15. On April 17, 2019, the Honorable Michael R. Barrett, United States District Judge in the Southern District of Ohio, signed an order authorizing the interception of wire and electronic communications over BRYANT's telephone, (859) 638-1537. On May 4, 2019 at approximately 7:28pm, UM9030 using his previous cellular telephone number, (414) 345-7694, sent an SMS to BRYANT at (859) 638-1537 stating, "friend of the 6 that are missing things how many do you have?" At approximately 8:36pm, BRYANT using (859) 638-1537 responded by SMS to (414) 345-7694 stating, "I paid for another today. I have the rest….I still owe for 5 that I

have…What is the problem?" At approximately 9:08pm, UM9030 using (414) 345-7694 responded to BRYANT via SMS at (859) 638-1537 stating, "for when you have that ready is that they asked the boys how many they had told my boss were missing 6 that you did not have even the money I scold my boss he wants it to be like before you take 2 maximum and to be paid he thinks that with that money you can buy worthwhile work even though this lower quality does not say that you are not honest but it is a company formed by several partners and some begin to suggest things that they believe." BRYANT responded by SMS to (414) 345-7694 stating, "I have 5 that I have not paid for. Not 6….Call with translator." UM9030 responded by SMS to BRYANT stating, "wait I'll do it when I go with my friend." Case agents believe UM9030 was advising BRYANT that his people (bosses) were asking when BRYANT could pay for the six kilograms of cocaine that he recently received. BRYANT was advising UM9030 that he only owed for five kilograms of cocaine not six. Because BRYANT speaks English and UM9030 Spanish with limited English, BRYANT wanted to speak to UM9030 with the aid of a translator to confirm how much he owed UM9030 and his co-conspirators.

16. On May 18, 2019, at approximately 3:58pm, UM9030 using his current cellular telephone, (262) 475-9030, placed an SMS to BRYANT at (859) 638-1537 stating, "New number Bro." At approximately 5:03pm, BRYANT using (859) 638-1537 sent an SMS to UM9030 at (262) 475-9030 stating, "Ok." Based on their training and experience, and the investigation to date, case agents believe that UM9030 was providing BRYANT with his new number, which BRYANT acknowledged in a response text. Case agents believe that UM9030 will now use (262) 475-9030 to communicate with BRYANT to distribute controlled substances, including the six kilograms of cocaine discussed on May 17, 2019.

17. Subpoenaed subscriber information from Verizon reflect that the number (262) 475-9030 was activated on May 18, 2019, which is consistent with UM9030 providing BRYANT with the number (262) 475-9030 on May 18, 2019. Additionally, information retrieved from court authorized pen data records of (414) 345-7694 reflect the last outgoing communication from (414) 345-7694 was on May 18, 2019, showing one outgoing call for that date and no further outgoing communications since then. Pen data further reflects two unanswered incoming calls to (414) 345-7694 on May 18, 2019, with no answer and no other activity. According to Verizon records, the number of (414) 345-7694 was suspended on May 17, 2019, with no further payments to keep the phone activated

18. On May 31, 2019, at approximately 3:39pm, UM9030 received an incoming SMS at (262) 475-9030 from BRYANT using (859) 638-1537 stating, "I should be able to pay for that last one today or tomorrow. I need one now so I am sending my friend to get one....My friend is bringing the money for that last one. He will pick up 5." UM9030 using (262) 475-9030 responded stating, "K bro." Based on their training and experience, and the investigation to date, case agents believe BRYANT was advising UM9030 that he would pay for the last of the previous cocaine shipment he received from UM9030.

19. On June 3, 2019, the Honorable Lynn Adelman, United States District Judge in the Eastern District of Wisconsin, signed an order under authorizing the interception of wire and electronic communications over (262) 475-9030. The order further authorized real-time precise location information for (262) 475-9030. However, the results of the real-time/GPS for (262) 475-9030 have not been within a distance feasible for determining the precise location and identifying UM9030.

20. On June 5, 2019, at approximately 11:39am, UM9030 using (262) 475-9030 placed an outgoing call to an unknown male (UM7757) at the number of (414) 514-7757. During the conversation, UM9030 and UM7757 greeted each other. UM7757 then stated, "Is it nice and thin for the stamp?" UM9030 responded, "No, they are sexually assaulting me currently…. They have me chained by the leg from 1 room to the kitchen." UM7757 stated, "Over here. I am coming from the "shop….. Where are you going to be later so I can give you your cents?" UM9030 answered, "Well, you let me know, when I leave here I will find you." UM7757 stated, "Alright, I'll head closer to you for when you call me." Based on their training and experience, and the investigation to date, case agents believe UM9030 was advising UM7757 that he was working at a stash house packaging narcotics or proceeds under the direction of the people UM9030 works for. UM7757 asked UM9030 where he would be later so he could take UM9030 money.

### C. CONCLUSION

21. Based on the foregoing, I believe that UM9030 is distributing narcotics and engaging in a conspiracy to possess and to distribute narcotics, in violation of 21 U.S.C. Sections 846 and 841, and that UM9030 is a cocaine source of supply for the BRYANT DTO and utilizes (262) 475-9030 in furtherance of his drug trafficking activities.

### MANNER OF EXECUTION

22. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

23. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Device or receiving signals from nearby cellular devices, including the Target Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Device and thereby prompt it/them to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Devices and use that information to determine the Target Device's locations, even if located inside a house, apartment, or other building.

24. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Device, and law enforcement will limit collection of information from devices other than the Target Device. To the extent that any information from a cellular device other than the Target Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Device from all other cellular devices.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and/or flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Device outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

29. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

_____
Scott Marlock
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me,
this ____ day of June, 2019.

_____
THE HONORABLE WILLIAM E. DUFFIN
United States Magistrate Judge

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to locate the cellular device assigned call number (262) 475-9030 (IMEI) 359536092196005.

# ATTACHMENT B

Pursuant to an investigation of UM9030 for a violation of 21 United States Code, Sections 841(a)(1) and 846, this Warrant authorizes the officers to whom it is directed to determine the location and identification of the user of cellular telephone number (262) 475-9030 (IMEI) 359536092196005 identified in Attachment A by collecting and examining:

1. radio signals emitted by the target device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target device in response to radio signals sent to the device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).